AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
5/16/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____MMC_____ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
5/16/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____jm_____ DEPUTY

United States of America

v.

KIEURMANBI MAMUCHIEV,

Defendant.

Case No.  2:25-MJ-03027-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of December 12, 2024 in the county of Los Angeles in the Central District of California, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g)(5) | Alien in Possession of a Firearm |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Donovan Manning
*Complainant's signature*

Donovan Manning, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone. Date: May 16, 2025 at 11:25 a.m.

[signature]
*Judge's signature*

City and state: Los Angeles, California

Hon. Michael Kaufman, U.S. Magistrate Judge
*Printed name and title*

AUSA: Christina Marquez (x4061)

**AFFIDAVIT**

I, Donovan Manning, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against and arrest warrant for Kieurmanbi Mamuchiev ("defendant") for a violation of 18 U.S.C. § 922(g)(5): Alien in Possession of a Firearm.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, evidence in this matter, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

3. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been since May 2021. I am currently assigned to the Homeland Security Investigations ("HSI") Integrated Operations Group Task Force. I am a graduate of the Criminal Investigator Training Program and the ATF Special Agent Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia, where I received training in federal laws and regulations. I regularly

refer to these laws and regulations during the course of my duties, and have participated in investigations, and the execution of warrants for violations of these laws and regulations.

### III. STATEMENT OF PROBABLE CAUSE

4. Based on my review of law enforcement reports, conversations with other law enforcement agents, review of evidence, and my own knowledge of the investigation, I am aware of the following:

**A. Hawthorne PD Officers Responded to Assault with a Deadly Weapon Service Call**

5. According to Hawthorne Police Department ("HPD") reports, on December 12, 2024, at approximately 3:06 a.m., HPD Officers responded to a service call regarding an Assault with a Deadly Weapon with a Firearm that occurred at an adult entertainment club at 4824 W Imperial Hwy, Inglewood, CA 90304 called Bare Elegance (the "Business"). The call stated there was a male shooting into the floor inside the business. The man identified in the 911 call was later identified as defendant through fingerprint evidence, witness statements, and surveillance footage.

6. Dispatch informed the officers that the suspect was a Middle Eastern male in his thirties, wearing a black long sleeve shirt and blue jeans. Upon arrival, HPD Officers conducted a protective sweep of the Business. HPD Officer Valle then recovered two (2) expended 9mm ammunition casings in the Very Important Person ("VIP") section of the Business.

7. HPD Officer Broc responded to the scene and interviewed Witness #1 ("W1"), who stated the following:

    a. W1 is a dancer at the Business. Prior to the incident, defendant requested to have a private dance by W1. W1 escorted defendant to a private room (the VIP room) where only W1 and the defendant were present during this private dance. W1 described defendant as a Russian or Middle Eastern male who W1 had seen previously at the Business. During the private dance in the VIP room, defendant declined to consume alcohol and only drank from a Red Bull can.

    b. W1 continued the dance and tried to entice defendant to spend more money, but he became upset and began yelling in an unknown language. W1 exited the room and advised the manager ("victim") about defendant's behavior.

    c. The victim had the defendant exit the VIP room. W1 reentered the VIP room without defendant inside to gather items. W1 then heard two gun shots just outside the VIP room.

    d. W1 only heard the shots and did not see defendant with a firearm at any point during their private dance.

8. Officer Broc entered the VIP room and saw a Red Bull can, which W1 confirmed to be the Red Bull can defendant had been consuming. HPD Officers retrieved the can wearing protective gloves as evidence.

9. HPD officer Valle interviewed the victim who stated the following:

    a. At approximately 3:00 a.m., the victim overheard a male arguing with the dancer inside the VIP room. The victim

went to the VIP room to intervene and defend W1. The victim told defendant to get out and leave.

    b. Defendant started to argue with the victim and then took out a firearm from his person and proceeded to fire two shots at the floor in the opposite direction to where the victim was standing.

    c. Soon after the two shots were fired, defendant turned around and pointed the firearm toward the victim. The victim stated that defendant was approximately four feet away from the victim's face with the firearm.

    d. The victim stated that defendant made statements but that the victim was unable to understand because the statements were made in a foreign language, which the victim described to be Russian. The victim then ran to the rear exit of the business and called the police for assistance.

10. HPD Officer Aguayo spoke with the security personnel, who provided him with video surveillance footage that captured the incident. HPD Detective Broc reviewed the footage which he then relayed depicted the following:

    a. Defendant exited the VIP room and argued with the victim. Defendant then reached to his rear waist band and retrieved a firearm. Defendant racked the slide of the firearm and walked toward the front of the VIP section. Defendant pointed the firearm towards the ground then walked back towards the victim. Defendant then walked back to the front of the VIP section and out of sight.

B. **HPD Identified Defendant Using Fingerprint Evidence**

11. On or about December 17, 2024, HPD Detective Bukhin requested the HPD forensic team process the two 9mm casings and the Red Bull can recovered from the scene. On or about February 12, 2025, the HPD forensics team began analysis of the fingerprints recovered from the Red Bull can. The automated fingerprint identification system (AFIS) search was conducted in the multimodal biometrics identification system (MBIS) and searched in the county, state, and federal databases. On or about March 12, 2025, HPD forensics concluded their comparisons and identified the fingerprint from the Red Bull can as matching the fingerprint of defendant. HPD forensics then notified Detective Bukhin that defendant was identified based off fingerprints recovered from the Red Bull can used by defendant.

12. Using law enforcement resources, Detective Bukhin obtained photographs of defendant and compared them to the individual captured on surveillance footage with a firearm at the Business. Detective Bukhin observed that defendant had similar physical characteristics as the individual in the video and that defendant was of Russian decent which corresponded to the witness and victim statements.

13. Using law enforcement resources, Detective Bukhin identified a possible address for defendant's residence and phone number for defendant. Detective Bukhin then authored a state search warrant for the account information and location data for that phone number. Pursuant to the state warrant,

Detective Bukhin received the account information which confirmed the number belonged to defendant.

14. Pursuant to the state warrant, Detective Bukhin observed the ping location data for defendant's cell phone and showed the cell phone was in the vicinity of defendant's possible residence.

15. On April 2, 2025, HPD officers conducted surveillance at defendant's residence and observed defendant leaving the residence. HPD officers observed defendant leaving that residence again on April 8, 2025.

C. **HPD Serves Arrest and Search Warrants for Defendant**

16. On April 16, 2025, Detective Bukhin authored state warrants for defendant's arrest, a DNA swab of defendant, the search of defendant's vehicle, and the search of defendant's residence. On that same day, the Honorable Katherine Mader, Judge of the Superior Court of Los Angeles County, signed and granted the warrants.

17. On April 17, 2025, at approximately 1:40 p.m., HPD officers conducted a traffic stop of defendant and arrested him without incident. HPD officers then conducted a search warrant for the defendant's residence. During the search warrant, two of the occupants directed HPD to defendant's room. HPD officers then identified defendant's room based on indicia found next to the bed, including an "A-FILE JACKET STARTER," which listed defendant's name, A-file number, and a photograph of defendant. HPD searched the room and recovered the following evidence:

      a.    A Glock 19, 9mm caliber pistol bearing serial #SDC096 found on defendant's bed stand in a black bag;

      b.    Ten (10) rounds of 9mm caliber ammunition found in the magazine of the Glock 19;

      c.    Ten (10) rounds of 9mm caliber ammunition found in a magazine inside the black bag;

      d.    An "AR-15 style" rifle bearing no serial number (commonly referred to as a "ghost gun") found in a guitar bag next to defendant's bed;

      e.    Thirty (30) rounds of 5.56 caliber ammunition found in a magazine inserted in the "AR-15 style" rifle;

      f.    A short-barrel rifle bearing no serial number found in the guitar bag;

      g.    Thirty (30) rounds of 5.56 caliber ammunition found in a magazine inserted in the short-barrel rifle;

      h.    A Springfield XD 9mm caliber pistol bearing serial #BB150935 found in a nightstand near defendant's bed; and

      i.    Fourteen (14) rounds of 9mm caliber ammunition found in the magazine of the Springfield XD.

**D.**    <u>**HPD Post-Miranda Interview of Defendant**</u>

18.    On April 18, 2025, Detective Bukhin read defendant his rights in Russian and defendant stated he understood his rights and agreed to speak with Detective Bukhin without an attorney present. Detective Bukhin asked defendant about the incident at the Business to which defendant admitted to being present at the business and admitted arguing with W1. Defendant denied shooting a firearm in the business.

**E.   Defendant is a Citizen and National of Russia who is Illegally Present in the United States**

19.   Based on information relayed to me by other law enforcement agents, on or about April 17, 2025, the ICE Pacific Enforcement Response Center ("PERC") received an electronic notification based on biometric fingerprint information that defendant was in the custody of Hawthorne Police Department ("HPD").  On or about that day, the PERC lodged a Department of Homeland Security ("DHS") Immigration Detainer with the HPD.  Defendant is not currently in custody with HPD.

20.   I compared a unique fingerprint identifier from the arrest referenced above against those contained in the immigration and removal records retained for defendant in DHS indices.  I have determined that these unique fingerprint identifiers are the same and therefore believe that both sets of records reference defendant.

21.   On or about May 14, 2025, Homeland Security Investigations ("HSI") Special Agent ("SA") Jamie Taylor and I reviewed the printouts of DHS computer indices on the defendant.  Records checks revealed that defendant is a citizen of Russia.  Based on training and experience, SA Taylor knows that the DHS computer indices track and document each time an alien is deported, excluded or placed into removal proceedings from the United States by DHS, was deported, excluded or placed into removal proceedings by the former INS, or is granted permission to enter or re-enter the United States.

22. The DHS computer indices confirmed that defendant had been placed into removal proceedings. On September 17, 2023, the defendant was charged by the United States Border Parol with violating Immigration and Nationality Act 212(a)(6)(A)(i) Alien Present Without Admission or Parole and placed into removal proceedings.

23. During an interview documented on a I-213, defendant informed Border Patrol agents that he was a citizen and national of Russia without the necessary legal documents to enter, pass through, or remain in the United States. Defendant also informed Border Patrol agents he illegally crossed the international boundary without being inspected by an immigration officer at a designated Port of Entry.

**F.     Interstate Nexus**

24. On or about May 6, 2025, ATF SA David Gonzalez, an ATF interstate nexus expert, examined evidence found at the residence of defendant and made the following determinations:

    a.   The Glock, model 19, 9mm caliber semi-automatic pistol, bearing serial number SDC096, was manufactured in Austria. For this firearm to be found in the United States, in the state of California, it must have moved in foreign and/or interstate commerce.

    b.   The Springfield Armory, model XD-9, 9mm caliber semi-automatic pistol, bearing serial number BB150935, was manufactured in Croatia. For this firearm to be found in the United States, in the state of California, it must have moved in foreign and/or interstate commerce.

   c. The one (1) round of Remington Peters (RP), .223 Rem caliber ammunition, marked with the headstamp "RP 223 REM", was manufactured in Arkansas. For this ammunition to be found in the state of California, it must have moved in interstate commerce.

   d. The twelve (12) rounds of Winchester, 9mm Luger caliber ammunition, marked with the headstamp "WIN 9mm LUGER", were manufactured in Illinois or Mississippi. For this ammunition to be found in the state of California, it must have moved in interstate commerce.

   e. The one (1) round of Companhia Brasileira de Cartuchos (CBC), 9mm Luger caliber ammunition marked with the headstamp "CBC 9mm LUGER", was manufactured in Brazil. For this ammunition to be found in the United States, in the state of California, it must have moved in foreign commerce and/or interstate commerce.

   f. The five (5) rounds of Blazer, 9mm Luger caliber ammunition, marked with the headstamp "BLAZER 9mm LUGER", were manufactured in Idaho. For this ammunition to be found in the state of California, it must have moved in interstate commerce.

   g. The two (2) rounds of Aguila, 9mm Luger caliber ammunition, marked with the headstamp "AGUILA 9mm", were manufactured in Mexico. For this ammunition to be found in the United States, in the state of California, it must have moved in foreign and/or interstate commerce.

   h. The one (1) round of Federal Cartridge (FC), 9mm Luger caliber ammunition, marked with the headstamp "FC 9mm

LUGER", was manufactured in Minnesota or Wisconsin.  For this ammunition to be found in the state of California, it must have moved in interstate commerce.

  i. The one (1) round of STV, 9mm Luger caliber ammunition, marked with the headstamp "STV 9mm LUGER", was manufactured in the Czech Republic.  For this ammunition to be found in the United States, in the state of California, it must have moved in foreign commerce and/or interstate commerce.

  j. The eight (8) rounds of SIG, 9mm Luger caliber ammunition, marked with the headstamp "SIG 9mm LUGER", were manufactured in Arkansas.  For this ammunition to be found in the state of California, it must have moved in interstate commerce.

  k. The two (2) rounds of Hornady, 9mm Luger caliber ammunition, marked with the headstamp "HORNADY 9mm LUGER", were manufactured in Nebraska.  For this ammunition to be found in the state of California, it must have moved in interstate commerce.

  l. The one (1) round of Winchester Military Ammunition (WMA), .223 caliber ammunition, marked with the headstamp "WMA 15", was manufactured in Illinois or Mississippi. For this ammunition to be found in the state of California, it must have moved in interstate commerce.

  m. The thirty (30) rounds of Poongsan Defense (PSD), .223 caliber ammunition, marked with the headstamp "PSD 24", were manufactured in South Korea.  For this ammunition to be

found in the United States, in the state of California, it must have moved in foreign commerce and/or interstate commerce.

n. The one (1) round of Ammo Incorporated, 9mm Luger caliber ammunition, marked with the headstamp "AMMO INC 9mm LUGER", was manufactured in Wisconsin. For this ammunition to be found in the state of California, it must have moved in interstate commerce.

o. The five (5) rounds of Winchester, 5.56 caliber ammunition, marked with the headstamp "WIN USA 5.56", were manufactured in Illinois or Mississippi. For this ammunition to be found in the state of California, it must have moved in interstate commerce.

p. The one (1) round of Winchester, .223 Rem caliber ammunition, marked with the headstamp "WINCHESTER 223 REM", was manufactured in Illinois or Mississippi. For this ammunition to be found in the state of California, it must have moved in interstate commerce.

q. The one (1) round of Lake City Army Ammunition Plant (LC), .223 caliber ammunition, marked with the headstamp "LC 07" was manufactured in Missouri. For this ammunition to be recovered in the state of California, it must have moved in interstate commerce.

r. The one (1) round of Federal Cartridge (FC), .223 Rem caliber ammunition, marked with the headstamp "FC 223 REM", was manufactured in Minnesota or Wisconsin. For this ammunition to be found in the state of California, it must have moved in interstate commerce.

## IV. CONCLUSION

25. For all of the reasons described above, there is probable cause to believe that defendant has committed a violation of 18 U.S.C. § 922(g)(5): Alien in Possession of a Firearm.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 25th of May 2025.

_____
HONORABLE MICHAEL KAUFMAN
UNITED STATES MAGISTRATE JUDGE